IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FRANCIS A. ZUSPAN,

   Petitioner,

v.           Civil Action No. 1:13cv167
             (Judge Keeley)

TERRY O'BRIEN, Warden,

   Respondent.

## REPORT AND RECOMMENDATION

### I.  Procedural Background

The *pro se* petitioner initiated this case on July 9, 2013, by filing a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2241.  The petitioner paid the required $5.00 filing fee on July 16, 2013.

(Doc. 7). On July 16, 2013, the undersigned made a preliminary review of the file, determined that

summary dismissal was not warranted, and directed the respondent to file an answer to the petition.

(Doc. 8).  The respondent filed a Motion to Dismiss  or for Summary Judgment and a Response to

the Show Cause Order on August 6, 2013. (Doc. 11).  Because the petitioner is proceeding *pro se*,

the Court issued a <u>Roseboro</u> Notice on August 8, 2013. (Doc. 13).  On August 14, 2013, the

petitioner filed Memorandum in Opposition (Doc. 15), and on August 19, 2013, he filed a Response

in Opposition. (Doc. 16).

### II.  Factual Background

The petitioner is currently incarcerated at USP Hazelton.  He is serving an 18  month

sentence imposed by the United States District Court for the Southern District of West Virginia for

a violation of 33 U.S.C. § 1319(c)(2)(A), discharge of pollutants into the waters of the United States without a permit. (Doc. 12-2, p.2). The petitioner's projected release date is May 30, 2014, via good conduct time. (Doc. 12-2, p.1). He has been recommended for placement in a Residential Release Center ("RRC") for a period of 30 to 60 days. (Doc. 12-3, p. 1).

### III. Issues Presented

In his petition, the petitioner asserts that the Bureau of Prisons has made a final decision for his placement in a RRC and in making that decision refused to analyze his case on an individualized basis pursuant to 18 U.S.C. § 3621 and C.F.R. § 570.20-22. Moreover, the petitioner alleges that his Unit manager advised him the decision to apply a 60 to 90 day RRC placement is applied to all inmates unilaterally regardless of the five factors in the statute. For relief, the petitioner requests an Order directing the BOP to properly consider his request for sufficient time in an RRC by formally assessing his case on an individualized basis and pursuant to the five factors in 18 U.S.C. § 3621(b).

In response to the petition, the respondent first argues that this matter must be dismissed because the petitioner failed to exhaust his administrative remedies. In addition, the respondent argues that the BOP's determination regarding the duration of the petitioner's RRC placement is not subject to judicial review. Moreover, the respondent alleges that BOP did not abuse its discretion with respect to its RRC review and referral of the petitioner's case pursuant to the Second Chance Act. Finally, the respondent argues that the petition should be dismissed as moot, because the petitioner has received the only relief to which he is entitled - consideration of his RRC placement in accordance with the factors delineated in 18 U.S.C. § 3621(b).

In his memorandum and response the petitioner refutes the respondent's position that this

matter must be dismissed for failure to exhaust his administrative remedies. In addition, the petitioner argues that the BOP has not adequately considered the factors required by the statute and committed clear error in its judgment. Citing Evans v. Caraway, 2011 WL 28300 (D. MD. 2011), the petitioner argues, that the BOP is obligated to make a detailed assessment with clarity of the respective inmate's case. The petitioner maintains that such an assessment did not occur in his case, and the BOP simply recited the five factors in a perfunctory manner and ignored the issues he articulated in his request to staff.

## IV. Standard or Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that

a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

**B. Motion for Summary Judgment**

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

**V. The Second Chance Act**

On April 9, 2008, the Second Chance Act of 2007, Pub.L.No. 110-99, was enacted. It amended 18 U.S.C. § 3624 and provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and

prepare for the reentry of that prisoner into the community." See 18 U.S.C. § 3624(c)(1). The statute

provides that those conditions may include confinement in a community correctional

facility/community corrections center/residential re-entry center, all of which are commonly known

as a "half-way house." The statute provides that the decision to confine a prisoner in a "half-way"

house shall be made on an individual basis and shall be made in light of several factors, most of

which are identified in 18 U.S.C. 3621(b). See Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008)

[BOP may consider factors in addition to those identified in 3621(b)]. The factors identified in 18

U.S.C. 3621(b) are as follows:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

## VI. ANALYSIS

### A. Exhaustion of Administrative Remedies

In the response to the petition, the respondent argues that the instant § 2241 petition should

be dismissed because the petitioner failed to exhaust his administrative remedies. The petitioner

maintains that the respondent's argument is without merit and is misplaced.

The undersigned does not dispute that the PLRA mandates the exhaustion of administrative

remedies, or that similar principles have been applied in habeas corpus actions. However, the

requirements of the PLRA are applicable to civil suits in which a prisoner challenges the

conditions of his confinement, not habeas proceedings challenging the execution of a sentence

under 28 U.S.C. § 2241. *See LaRue v. Adams*, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12,

2006) (citing *Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.) *cert. denied*, 521 U.S. 113

(1997)).[1]

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a

requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions

arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only

judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that

requirement in certain circumstances. *See Larue* at *8 (recognizing that several circuit and district

courts have found that the exhaustion requirements may be waived under § 2241 and noting that

although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to

---

[1] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

In this matter, the case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits.

**B.  18 U.S.C. § 3625**

In accordance with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review.  In this case, the petitioner challenges the length of time the BOP has deemed appropriate for him in an RRC prior to his release.  That decision is governed by 18 U.S.C. § 3624(c)(1).  As previously noted,  that section now provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

Because such a determination involves a decision regarding an inmate's place of imprisonment, in making a determination under § 3624(c), the Director must necessarily consider the five factors enumerated in 18 U.S.C. § 3621(b), as outlined previously in this Report.  However, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded subsections 3621 and 3624 from judicial review under the APA.  See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997).  Section

8

3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Accordingly, any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court. See Lyle v. Sivley, 805 F.Supp. 755, 760 (D.Ariz. 1992). However, even where judicial review under the APA is specifically excluded by statute, the court may still review whether there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority. Webster v. Doe, 486 U.S. 592 (1988); Turner v. Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974); Davis v. Beeler, 966 F.Supp. at 489.

It is well-established that an inmate has no constitutional right to be confined to a particular institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional violation occurred. For the reasons discussed below, the undersigned has determined that no such violation has occurred.

As previously noted, the petitioner argues that prison officials must perform more than a perfunctory review when making an individualized assessment of an individual's pre-release plans and RRC placement. However, in his case, the petitioner maintains that it is clear hat the BOP just recited the five factors in a perfunctory manner and ignored specific information he supplied.

9

Specifically, the petitioner maintains that he specific documentation that he had employment secured but needed to start the job by September 1, 2013. The petitioner maintains that he further informed staff that he was banned for life from working in his profession and could not find employment in his profession and could not find employment in his county upon release from custody. He also maintains that he needed that particular job to pay for his health care and take care of his wife. Therefore, it would appear that the sum of the petitioner's argument is that the BOP should have released him to an RRC prior to September 1, 2013, so he could take the job that he had secured. Even if true, none of these allegations state a clear constitutional violation.

Accordingly, the issue becomes whether the petitioner was properly reviewed for RRC placement utilizing the required five factors. In recommending the petitioner for 30 to 60 days transitional placement on home confinement, staff specifically noted that: "(1) There are available Residential Re-Entry Centers (RRC) in his release area; (2) The nature and circumstances of the offense are eligible for community corrections as there was no violence or other extenuating circumstances that would prelude placement; (3) The history and characteristics of the inmate are: he intends to obtain gainful employment through a RRC placement (4) The sentencing court in the Southern District of West Virginia did not make any statement on the Judgment and Commitment Order regarding RRC placement; and (5) There is no pertinent policy by the Sentencing Commission.(Doc. 12-3, p. 1). While this summary sheet is perfunctory, the referral process involves far more than this one-page Institutional Referral which become final when signed by the warden.

In his declaration, the petitioner's Unit Manager notes that an RRC placement is determined at a Program Review with the Unit Team which consists of the inmate's counselor, case manager,

and the unit manager. Once a determination is made that RRC placement is appropriate, the case manager prepares a packet of information necessary for community corrections use, which includes the inmate's formal referral for a specific range of time for RRC placement, supervised release plan, progress report, medical information, and a Community Based Program Agreement signed by the inmate agreeing to the general conditions of residing in a residential reentry center. Once the packet is prepared, it is then forwarded to the unit manager for review. After the unit manager is satisfied that the packet has been properly prepared, it is then forwarded to the Inmate Systems Supervisor ("ISS") for review. The ISS then forwards the packet to the Case Management Coordinator (CMC), who performs a third review. Once the CMC completes their review, the packet is then forwarded to the Assistant Warden (AW) for an additional review. At each level of review, if the reviewer does not concur with the Unit Team's recommendation, it is returned for re-evaluation and revision based on the reviewer's comments. (Doc. 12-1, pp. 2-3).

Mr. Sweeney further notes that although the Second Chance Act makes inmates eligible for a maximum of twelve month pre-release placement, it is only at the discretion of the BOP as to whether such a placement is awarded. Mr. Sweeney continues by noting that the petitioner was referred for an RRC placement in the range of 3w0-60 days based on an individualized assessment of his needs in transitioning back into community. Specifically, the 30-60 days was considered sufficient for him to capitalize on his skills and experience and take full advantage of the transitional services and programs in the halfway house to facilitate his transition back into the community. In particular, this range was deemed sufficient because of the petitioner's relatively short sentence of 18 months, his family support, including a wife waiting at home, and an already established release residence.

Accordingly, as required by the Second Chance Act, the petitioner's Unit Team made its review on an individual basis and considered the appropriate factors in recommending his 30 to 60 day placement. The fact that the petitioner was not recommended for a nine month placement so that he could begin work does not establish that the BOP was either derelict in its duties or wrong. Moreover, there is no evidence that the determination was arbitrary, capricious, or an abuse of discretion. Therefore, the petitioner cannot show that BOP officials violated the Second Chance Act, and his petition should be dismissed.

## VII.  Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 11) be **GRANTED,** the petitioner's Motion for Expedited Hearing be **DENIED AS MOOT**, and the petitioner's §2241 petition be **DENIED** and **DISMISSED with prejudice**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the

*pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

      DATED: 9 September 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE
